J-S04040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE JACKSON | : | |
| | : | |
| Appellant | : | No. 1876 EDA 2022 |

Appeal from the PCRA Order Entered June 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0502831-2004

BEFORE:  MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:              **FILED FEBRUARY 15, 2023**

Jermaine Jackson (Jackson) appeals from the order of the Court of Common Pleas of Philadelphia County (PCRA court) denying as untimely his third petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

**I.**

In July 2005, Jackson was convicted at a bench trial of possession with intent to deliver and possession of a controlled substance.[1]  This Court has previously set forth the facts underlying his convictions:

> On February 25, 2004, Philadelphia police concluded a targeted narcotics investigation and arrested a drug dealer who

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (16).

was found to be in possession of 160 grams of cocaine. Police were quickly able to persuade the dealer to become a confidential informant (CI). Later that day, the CI provided tips to police in a showing of good faith; these tips resulted in the arrests of two other street dealers, presumably supplied by the source that had been supplying the CI, and the confiscation of another 265.6 grams of cocaine.

The CI also provided police with the name, address, and practices of his supplier—[Jackson]. The CI informed police he still owed [Jackson] $3,100 for the cocaine that previously had been confiscated from his person and further informed police that if he paid [Jackson] the outstanding balance, he would then be re-supplied. The CI also told police he had been in [Jackson's] home earlier that day and had witnessed [Jackson] in possession of approximately 18 ounces of cocaine. The next day, February 26, 2004, police obtained a search warrant relying on the information provided by the CI. The search warrant affidavit stated "The warrant will only be served if the [CI] enters ... and provides Jackson with the $3,100.00 pre-recorded buy money." The district magistrate approved the warrant.

Later that afternoon, police met with the CI, provided him with $3,100 in pre-recorded buy money, and instructed him to ask [Jackson] for more cocaine. Police then set up surveillance on [Jackson's] residence, dropped the CI off in the immediate area, and watched from a distance as he entered [Jackson's] residence. A few moments later, the CI exited [Jackson's] house and told police he had requested another 18 ounces of cocaine from [Jackson] but that [Jackson] needed to re-supply himself before filling the request.

Shortly thereafter, police observed [Jackson] and his wife exit the residence and drive off. Police followed [Jackson] to a street corner. [Jackson] exited his vehicle, approached a white Pontiac sitting on the street, and got into the back seat of the Pontiac. Police waited for the next two minutes until [Jackson] got out of the Pontiac. [Jackson] then drove off.

Moments later, the CI, who was in the presence of police, received a call from [Jackson], who told the CI he had "gotten the stuff." Within minutes, police stationed at [Jackson's] residence observed him returning home. [Jackson] exited the vehicle he had been driving, while his wife remained inside.

Once [Jackson] entered his residence, police quickly converged on the front entrance. After getting to the mouth of the entry way, police observed [Jackson] through a screen door sitting on a chair with items on his lap. Police announced their presence and [Jackson], startled, shot out of his seat. Four large bags of cocaine fell from his lap and onto the floor. Meanwhile, two other officers confronted [Jackson's] wife in the vehicle parked out front.

The four bags of cocaine that had fallen from [Jackson's] lap contained approximately 18 ounces of cocaine. Upon searching the remainder of [Jackson's] residence, police uncovered four more bags of cocaine containing an aggregate of approximately 300 grams. A search of [Jackson's] wife resulted in the recovery of $3,674 in cash, including the $3,100 in pre-recorded buy money.

After being bound over for trial, [Jackson] retained private counsel. Shortly thereafter, [Jackson] filed a motion to compel the disclosure of the identity of the CI. The motion was denied on August 10, 2004. On March 18, 2005, [Jackson] filed a *pro se* suppression motion seeking to exclude the drugs recovered from his residence and the pre-recorded buy money recovered from his wife. At some point it became clear that private defense counsel had a number of scheduling conflicts with the trial court docket; as a result, the trial court appointed backup counsel. Subsequently, [Jackson] terminated his private defense counsel's representation and opted to proceed with appointed backup counsel.

On July 7, 2005, after consulting with appointed backup counsel, [Jackson] signed and initialed a jury trial waiver colloquy. On that same day, the trial court issued an Order granting appellant's motion to suppress with respect to the pre-recorded buy money seized from his wife but denying the motion with respect to the cocaine recovered from appellant's residence. Later that day, a bench trial was held at the conclusion of which the trial court rendered its judgment.

**Commonwealth v. Jackson**, No. 559 EDA 2007, unpublished memorandum

at 1-4 (Pa. Super. filed December 27, 2007).

After being found guilty, Jackson obtained new counsel and filed a post-verdict motion seeking a new trial. As a result, sentencing was deferred while the trial court held several hearings on the post-verdict motion, which it eventually denied. Finally, on January 31, 2007, the trial court sentenced him to 7 to 14 years' imprisonment. This Court affirmed the judgment of sentence in December 2007, and the Pennsylvania Supreme Court denied his petition for allowance of appeal in June 2009.[2] Jackson filed his first PCRA petition the following month in July 2009, and the PCRA court dismissed the petition a year later in July 2010. Jackson waited nine years until he filed his second petition in July 2019. The PCRA court denied the petition as untimely in August 2019.

On April 1, 2020, Jackson filed this, his third, *pro se* PCRA petition requesting that his sentence be adjusted because he was still serving an illegal mandatory sentence.[3] Almost a year later, on March 9, 2021, Jackson filed

---

[2] ***Commonwealth v. Jackson***, 973 A.2d 1006 (Pa. filed June 22, 2009).

[3] To be eligible for relief under the PCRA, a petitioner must be "currently serving a sentence of imprisonment, probation, or parole for the crime." 42 Pa.C.S. § 9543. As noted, Jackson was sentenced to 7 to 14 years' imprisonment on January 31, 2007, thus giving him an original maximum sentence date of January 31, 2021. In his petition, Jackson alleged that he was still serving his sentence, alleging that "[due] to parole my sentence max date has been changed to sometime in 2024" and that he "is [in] on another case and needs this matter taken care of to continue to fight his other case." As neither the PCRA court nor the Commonwealth has disputed that Jackson is currently still serving his sentence on this case, nor will we.

another petition appearing to raise a newly-recognized constitutional right claim based on our Supreme Court's decision in **Commonwealth v. McClelland**, 233 A.3d 717 (Pa. 2020) (holding that the Commonwealth cannot rely on hearsay alone to establish *prima facie* at a preliminary hearing). Then, on May 27, 2021, Jackson filed another supplement in which he alleged that the detectives in his case were "part of the corrupt cops." Because of this allegation, on July 28, 2021, the Commonwealth sent Jackson the police misconduct disclosure packets for two officers involved in his case.

After receiving the packets, on August 22, 2021, Jackson supplemented his petition by adding a newly-discovered evidence claim based on the information that two of the officers in his cases were corrupt. Based on this information, Jackson alleged that the officers presumably lied and fabricated the CI so as to obtain the search warrant. Related to this assertion, Jackson added a claim of ineffective assistance of counsel, alleging that all of his prior attorneys were ineffective in failing to compel disclosure of the CI.

On March 7, 2022, the PCRA court issued notice of its intent to dismiss the petition without hearing under Pa.R.Crim.P. 907, explaining that none of Jackson's claims fell under any of the timeliness exceptions to the PCRA time-bar. After receiving a response from Jackson, the PCRA court formally denied his petition as untimely on June 27, 2022, following which Jackson filed this timely appeal.

On appeal, Jackson raises five issues for review, which we have reordered for ease of discussion:

> 1. Did the PCRA court err in denying Jackson's motion to disclose confidential informant?
>
> 2. Did the PCRA court err in denying Jackson's claims of ineffective assistance of counsel?
>
> 3. Did the PCRA court err in denying Jackson's claims of hearsay evidence?
>
> 4. Did the PCRA court err in not correcting Jackson's sentence when there are no mandatory sentences in Pennsylvania?
>
> 5. Did the PCRA court err in denying Jackson's motion to disclose confidential informant?

Jackson's Brief at unpaginated 3.

## II.

A PCRA petition, including a second or serial petition, must be filed within one year of the date the judgment becomes final. 42 Pa.C.S. § 9545(b)(1).[4] A judgment becomes final at the conclusion of direct review "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Because the timeliness requirements of the PCRA are jurisdictional in nature, courts cannot address the merits of

---

[4] Whether a PCRA petition is timely raises a question of law for which our standard of review is *de novo.* **Commonwealth v. Reid**, 235 A.3d 1124, 1166 (Pa. 2020).

- 6 -

an untimely petition. ***Commonwealth v. Moore***, 247 A.3d 990, 998 (Pa. 2021) (citation omitted).

Jackson's judgment of sentence became final in 2009 when his time to file a petition for writ of *certiorari* in the United States Supreme Court expired. ***See*** 42 Pa.C.S. § 9545(b)(3).  He must, therefore, plead and prove for each of his claims one of the three enumerated exceptions to the PCRA time-bar:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).  Additionally, Section 9545(b)(2) requires that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented."   42 Pa.C.S. § 9545(b)(2).

In his first issue, Jackson challenges the denial of his motion to disclose the CI's identity was raised on direct appeal.  However, he raised this issue on direct appeal, and this Court reviewed its merits and found no relief due. ***See Jackson***, No. 559 EDA 2007, at 11-13.  As a result, this claim has already been litigated.  ***See*** 42 Pa.C.S. § 9544(a) ("[A]n issue has been previously

litigated if … the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]").

For his second issue, Jackson alleges that all his prior attorneys were ineffective in failing to compel disclosure of the CI's identity. In so alleging, though, Jackson fails to plead and prove any of the timeliness exceptions, asserting instead that no waiver should be found because of cumulative counsel error. However, "[i]t is well settled that allegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA." **Commonwealth v. Wharton**, 886 A.2d 1120, 1127 (Pa. 2005) (citations omitted). Thus, his second claim is untimely.

As for his third issue, Jackson attempts to raise a claim challenging the use of hearsay at his preliminary hearing. It is well-settled, however, that any purported defect or error at the preliminary hearing stage is immaterial if the defendant has been found guilty at trial. **See Commonwealth v. Sanchez**, 623 Pa. 253, 82 A.3d 943, 984 (2013) (holding, "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial" (citation omitted).

We also find no relief due to the extent Jackson is attempting to raise a newly-recognized constitutional right claim under Section 9545(b)(1)(iii) based on our Supreme Court's decision in **McClelland**.

> Subsection (iii) of Section 9545(b)(1) has two requirements. First, it provides that the right asserted is a constitutional right

- 8 -

that was recognized by the Supreme Court of the United States or [the Pennsylvania Supreme Court] after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. **Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively … to cases on collateral review.**

*Commonwealth v. Leggett*, 16 A.3d 1144, 1147 (Pa. Super. 2011) (citation omitted) (emphasis in original).

In his brief, Jackson fails to recognize the untimeliness of his claim, not to mention that he fails to address whether the Pennsylvania Supreme Court has held that the constitutional right recognized in *McClelland* applies retroactively, which, based on our review, it has not. Thus, *McClelland* cannot serve as a basis for a newly-recognized constitutional right claim at this time. *See Commonwealth v. Slaughter*, 2022 WL 122472, at *3 (Pa. Super. 2022) (non-precedential decision) (finding PCRA court properly rejected newly-recognized constitutional right claim based on *McClelland*).[5]

We find the same concerning Jackson's fourth issue in which he seeks a non-mandatory sentence. While he does not cite any case law for this claim, Jackson presumably relies on *Alleyne v. United States*, 570 U.S. 99 (2013) (holding that any fact which increases the mandatory minimum sentence for a crime is an element of that crime and, therefore, must be submitted to a

---

[5] *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

jury and proven beyond a reasonable doubt). Besides Jackson failing to file this claim until several years after *Alleyne* was issued, our Supreme Court has explicitly held that *Alleyne* does not apply retroactively on collateral review. *See Commonwealth v. Washington*, 142 A.3d 810, 820 (Pa. 2016).

Finally, in his fifth issue, Jackson asserts that the PCRA court erred in denying his after-discovered evidence claim, which he mistakenly labels a newly-discovered facts claim. As our Supreme Court has explained:

> the newly-discovered facts exception to the time limitations of the PCRA, as set forth in subsection 9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S. § 9543(a)(2). To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence. However, where a petition is otherwise timely, to prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v.* **Burton**, 158 A.3d 618, 629 (Pa. 2017). All four of these requirements must be proved; if the defendant fails to establish any one of these, the newly-discovered evidence claim fails. *Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018); *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

Assuming that Jackson satisfied the newly-discovered fact timeliness exception, we would find this claim meritless. Jackson presents no evidence specific to this case about how any of the detectives or officers conducted their investigation. Instead, he merely relies on unrelated misconduct on cases that happened long after 2005 when the search in this case occurred. As this Court has previously explained on this area of the law:

> Evidence of a police witness's subsequent misconduct in other unrelated cases does not satisfy the requirements for a new trial based on after-discovered evidence. [**Commonwealth v**.] **Johnson**, 179 A.3d [1105, 1122-33 (Pa. Super. 2018)] (affirming denial of PCRA after-discovered evidence claim based on criminal convictions of police detective who testified at defendant's trial and was involved in questioning a witness who identified the defendant, where convictions occurred years after defendant's trial and arose out of conduct in an unrelated case); **Commonwealth v. Foreman**, 55 A.3d 532, 534-35, 537 (Pa. Super. 2012) (affirming denial of PCRA after-discovered evidence claim based on criminal charges against police detective who testified at defendant's trial, where charges arose out of conduct in an unrelated case that occurred more than two years after defendant's trial); **see also Commonwealth v. Griffin**, 137 A.3d 605, 610 (Pa. Super. 2016) (reversing grant of new trial based on after-discovered evidence of misconduct of police officer who testified at defendant's trial where alleged misconduct was in unrelated case); **Commonwealth v. Brown**, 134 A.3d 1097, 1108-09 (Pa. Super. 2016) (rejecting after-discovered evidence claim based on interrogating police detectives' misconduct in unrelated cases).

**Commonwealth v. Rouse**, 2019 WL 5858067, at *3 (Pa. Super. filed November 8, 2019) (non-precedential decision).[6]

---

[6] **See** Footnote 5.

Consistent with these cases, we find no error in the PCRA court's conclusion that this issue was meritless because there was no evidence of wrongdoing or misconduct in Jackson's case. Indeed, as the PCRA court explained:

> The [police misconduct packets that Jackson] submitted do not make out a claim of newly discovered evidence. The packet for Officer Coolen proves misconduct that occurred years after your case. The packet for Officer Beattie only states that he was under investigation as of September 2020. This is not dispositive of any wrongdoing at or before the time of your case.

Rule 907 Notice, 3/7/22, at 1-2.

Accordingly, we find that the claim was meritless and, therefore, did not raise a genuine issue warranting an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/15/2023</u>